# Richmond.

## Sitterding v. Patterson's Administratrix.

### March 12, 1903.

1. Appeal and Error—*When Verdict Will Not be Set Aside—Case at Bar.*
On a writ of error, the plaintiff in error stands as a demurrant to the evidence, and the verdict will not be set aside in a doubtful case, but only where it is, upon the evidence, a plain deviation from right and justice, or where there is a palpable insufficiency of evidence to support it. In the case at bar the allegations were that the plaintiff in error furnished insufficient, unsound, and defective joists for a scaffold on which the intestate was engaged at work; that the joists were insufficiently braced, and that the plaintiff in error negligently removed the braces, thereby causing the accident which resulted in the death of the intestate of the defendant in error, but none of these allegations were sustained by the evidence. The evidence was plainly insufficient to sustain the allegations.

Error to a judgment of the Circuit Court of the city of Richmond, rendered March 14, 1902, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Sol. L. Bloomberg* and *H. S. Bloomberg*, for the plaintiff in error.

*Henry R. & John Garland Pollard*, for the defendant in error.

Harrison, J., delivered the opinion of the court.

Lauchland Patterson came to his death by falling with a

scaffold upon which he was working from the third story of a building being erected in the city of Richmond. This suit is brought by his administratrix, alleging that the negligent conduct of the plaintiff in error in erecting and maintaining the scaffold was the cause of the accident, and that he is responsible for this lack of care, and must respond in damages for the consequences flowing from it. The result of the trial was a verdict and judgment in favor of the defendant in error for $2,000. The action of the Circuit Court in refusing to set the verdict aside as contrary to the law and the evidence is the sole ground of error assigned in this court.

It appears that Fritz Sitterding, the plaintiff in error, was the general contractor for the construction of a large fire-proof building 41x130 feet, and five stories high; that E. T. Mankin was his sub-contractor for the brick-work, and that the intestate was employed by Mankin as foreman in charge of the brick-work. This being a fire-proof building, it was not erected in the ordinary way with permanent wooden joists placed in the walls at a distance of eighteen inches apart, as each story was reached, but iron girders were placed fourteen or fifteen feet apart, reaching across the building and resting upon iron columns; these iron girders being made to support a concrete fireproof flooring which was not to be put in until all of the brickwork was completed. In order to furnish a support for the bricklayers' scaffold, it became the duty of Sitterding, the plaintiff in error, to furnish, and have placed in position upon these iron girders, wood joists, standing upon their edge, with strips nailed across to keep them in an upright position. Around the walls the bricklayers erected upon these joists the scaffolds on which they worked, and on a span in the centre of the building, next to the elevator, they laid, for the purpose of unloading their material, a temporary flooring, consisting of one-inch plank laid close together, furnished by themselves, upon which were placed the mortar boxes, mortar, bricks, sills, &c., to be

distributed as needed on that floor. These one-inch planks, supported by the joists which rested in turn upon the iron girders, constituted the platform upon which the deceased was standing at the time of the accident, some sixty feet above the basement floor, with nothing between to break or arrest the fall.

As the bricklayers finished their work on each floor, and removed their scaffolding, materials, mortar boxes, flooring, &c., it was the duty of plaintiff in error to remove the joists from that floor and place them in the same position on the next. The brick-work had been completed to, and including, the third story; and preparatory to beginning work on the fourth story, the scaffolding had been removed from around the walls; the bricks, sills, and one mortar-box had been removed from the platform near the elevator, and the deceased, with two other workmen, were in the act of removing the last mortar-box from this platform when the accident occurred.

The declaration alleges, in substance, that the plaintiff in error furnished insufficient, unsound, and defective joists for the scaffold, and insufficiently braced the joists, and negligently removed the braces necessary to hold the joists in their upright position while the intestate was upon the platform engaged in removing the mortar-box; and that, by reason of these several negligent acts, or one of them, the accident was caused which resulted in the death of the plaintiff's intestate. To sustain these allegations the defendant in error introduced three witnesses—M. J. Dimmock, the architect and superintendent of construction; E. T. Mankin, the brick contractor and employer of deceased; and Richard Johnson, one of the laborers employed by Mankin, and working under the deceased.

M. J. Dimmock testifies that he was present every day inspecting the building during its construction; that he thought the scaffolding was amply strong; that the same scaffolding was used from the first to the fifth, or top, story, and that it had borne the necessary weight and proved sufficient on the

other stories; that, in his opinion as an expert, the scaffold put up by the plaintiff in error was a stronger scaffold than bricklayers generally erected for themselves; that if, in moving the mortar-box the work was carelessly done, the joists could be thrown over, but that if carefully done it was not necessary that they should be turned over; that the joists could be removed from every span on the floor but one without interfering with the remaining span, and that he could not see how it was possible to rip up the strips holding the joists in position while the mortar-box was on top of them. This witness was examined at great length by counsel for plaintiff in court below to show that the bracing of the joists was not sufficient, but the fair result of his evidence is, we think, as stated. It fails to show that unsound joists were furnished, or that the bracing of the joists was insufficient, if the work was done with reasonable care, or that the plaintiff in error negligently removed the braces.

E. T. Mankin, the sub-contractor for the brick-work and employer of the deceased, says that the joists were of good timber, as far as he could judge; that they were held in an upright position by strips nailed across each end; that he made it a point on each floor to see that everything was secure and in proper shape before his men started. This witness was asked a great many questions, but he never changed or modified the statements mentioned; and at no time imputed to the plaintiff in error the slightest negligence in furnishing the joists, or placing them in position; and not an answer was elicited showing that the plaintiff in error attempted to remove the braces improperly.

The remaining witness introduced by defendant in error was Richard Johnson, who was working with deceased, and was the only eye-witness to the accident. This witness does not pretend to show that the timber was defective, that the joists were improperly or insufficiently braced, or that the braces were im-

properly removed. He does show, however, that the accident was the result of the careless and negligent manner in which the deceased did his work. It appears from this witness that he and another laborer were working with the deceased on the platform in question, that everything had been removed but one mortar-box, which contained about a barrel and a half of mortar; that the three, including deceased, were moving the mortar-box in the direction of the elevator; that the mortar-box would be raised up and a roller be put under it, and that then deceased would shove it with a crowbar; that the platform was covered with plank lying close together, and that the deceased raised up one of these planks and pushed it to one side and placed his foot against the joist thus exposed, to enable him the better to push the box; and threw his whole weight upon the foot against the joist, which turned it over on the side, thus causing the platform to give way and the whole to be precipitated to the basement. The evidence introduced on behalf of the plaintiff in error, not at all in conflict with that of defendant in error, shows that the plaintiff in error was free from blame in the matter, and it emphasizes the negligence of the deceased, in the mode of doing his work under the circumstances in which he was placed; it appearing that several persons saw his careless conduct, and warned him of the danger.

Recognizing the rule that the plaintiff in error stands in this court as upon a demurrer to the evidence, and keeping in view the established doctrine that this court will not set aside the verdict of a jury in a doubtful case, but will only do so where the verdict is a plain deviation, upon the evidence, from right and justice, or where there is a palpable insufficiency of evidence to sustain it, we are constrained to hold, in this case, that the evidence was not sufficient to warrant the verdict, and that the Circuit Court erred in not setting it aside.

For these reasons the judgment complained of must be reversed, the verdict be set aside, and the cause remanded for a new trial. *Reversed.*